UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 23-CR-125** |
| | : | |
| v. | : | **VIOLATION:** |
| | : | **18 U.S.C. § 1343 (Wire Fraud)** |
| **GRAHAM HAUCK,** | : | |
| | : | **FORFEITURE: 18 U.S.C. § 981(a)(1)(C),** |
| Defendant. | : | **28 U.S.C. § 2461(c)** |

## STATEMENT OF OFFENSE

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Statement of Offense in the above-captioned case.

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything the defendant said, is it a recitation of all that the defendant said.

Had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following facts.

## BACKGROUND

1. Graham Hauck resided in Maryland and served as president and CEO of Hauck & Associates, Inc. ("H&A"), a trade association management firm based in Washington, D.C.

2. Person One resided in Virginia and was an H&A employee.

3. The Victim Organization was a nonprofit professional trade association. It maintained a checking account ending in 5521 at United Bank and a money market account ending in 0222 at Capital One Bank.

4.      For approximately 19 years, the Victim Organization hired H&A as its management company. For the period covering January 1, 2019, through December 31, 2019, the organization agreed to pay H&A an annual management and headquarters fee of $148,475 with one-twelfth of the fee (i.e., approximately $12,372) to be billed on the first day of each month. In conjunction with that agreement, Person One served as the Victim Organization's Executive Director, taking care of day-to-day management duties.

5.      H&A was authorized to pay itself the $12,372 monthly management fee from the Victim Organization's United Bank account. H&A did not have authority to move funds from the Victim Organization's Capital One account.

## THE SCHEME TO DEFRAUD

6.      From on or about March 7, 2019, through on or about October 17, 2019, Hauck engaged in a scheme to defraud the Victim Organization out of money by means of materially false and fraudulent pretenses, representations, and promises. Specifically, he used H&A's relationship with the Victim Organization to steal a total of approximately $336,222 from the organization's United Bank and Capital One accounts.

7.      Between March 7, 2019, and September 23, 2019, Hauck stole approximately $160,845 from the United Bank account by fraudulently writing checks to H&A and depositing them into an H&A bank account, and by fraudulently initiating ACH payments to an H&A bank account. Each of the thirteen fraudulent checks/ACH transfers were for approximately $12,372, i.e., the same amount that H&A charged for its monthly management fee. Hauck did not have permission to write these checks or initiate these ACH payments.

8.      Hauck stole approximately $175,377 from the Victim Organization's Capital One account between approximately August 19, 2019, and October 18, 2019. On August 19, 2019,

Hauck wrote a fraudulent check from the Capital One account to H&A in the amount of $100,000, using Person One's signature. The following day, the check was deposited into an H&A account; on that same day, an ACH transfer in the amount of $49,999.99 that Hauck fraudulently initiated posted to an H&A account. On September 4, 2019, Hauck initiated an additional $15,000 ACH transfer from the Capital One account to an H&A account. On or about October 17, 2019, Hauck initiated an additional $10,377.22 transfer from the Capital One account.

9.  On September 24, 2019, Person One sent Hauck an email flagging the unusual Victim Organization bank activity over the prior three months. Hauck, who was in Switzerland, replied by email as follows:

> Hi – I need to see why how happened. It appears deposits (we/Hauck made) were double or tripled in either the ACH or Check and I don't see why. I will tabulate them and get an answer to you ASAP. Clearly some refunds are due and I will try and do those this week if I can while I am away. We can then determine what if anything more is due to [the Victim Organization] or to Hauck. The first priority is to undue the errors in these transactions – some of these I do not see in the receiving side of our (Hauck) account but need to look more at the transactions. I will try and do this tonight and tomorrow. Certainly by beginning of next week when I am back. This is certainly concerning.

10. Hauck knew that the email he sent to Person One, who was serving as the Executive Director for the Victim Organization, was false. He sent the email, which traveled from Europe to the United States to further his scheme by concealing it from Person One so he could continue to attempt to steal money from the Victim Organization.

11. Hauck also created inaccurate balance sheets that Person One presented monthly to the Victim Organization's Board of Directors at teleconference meetings. The balance sheets falsely showed the Victim Organization's bank accounts containing more money than they actually did. For example, the balance sheet for the nine-month period ending September 30, 2019, i.e., after Hauck had already stolen $160,845 from the United Bank account and approximately

$165,000 from the Capital One account, showed the Capital One account as having a balance of $176,387.21 and the United Bank account as having a balance of $186,097.20. Bank statements show the beginning balances, as of October 1, 2019, for the two accounts as $11,420.56, and $5,144.26, respectively.

12. The proceeds from Hauck's wire fraud scheme that he obtained have been dissipated by him and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By: /s/ Kondi J. Kleinman
Kondi J. Kleinman
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
California Bar No. 241277
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6887
kondi.kleinman2@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime that is charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I read every word of this Statement of Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date:  5/10/23

GRAHAM HAUCK
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of Offense as true and accurate.

Date:  5/10/23

DAVID BENOWITZ, Esq.
Counsel for Graham Hauck